```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
JOSHUA LUIS REYES

         Plaintiff,                    MEMORANDUM AND ORDER

    -against-                          Civil Action No.
                                       CV-04-3653 (DGT)
DAVID L. MILLER

         Defendant.

-------------------------------X
```

TRAGER, District Judge

Petitioner Joshua Luis Reyes ("Reyes")[1] brings this petition pursuant to 28 U.S.C. § 2254. Reyes challenges an alleged constitutional violation stemming from his 1998 state court conviction for Manslaughter and Criminal Possession of a Weapon. Reyes is currently serving consecutive sentences of five to fifteen years and three and a half to thirteen and a half years. Reyes seeks habeas corpus relief because his right to due process was allegedly violated when the trial court denied his request for a missing witness charge relating to the prosecution's failure to call Nicky Carrasquillo, an eyewitness, to the stand. For the reasons that follow, the petition is denied.

---

[1]Petitioner is also known as Angel Reyes.

## Background

### (1)

A jury convicted Reyes for the August 10, 1995 murder of Isaac Adanmes. The below account is taken primarily from Reyes' 1996 statement to the police, which formed the bulwark of the factual background introduced at trial.

The murder occurred around 9:45 p.m. in a parking lot on the corner of Evergreen Avenue and Cornelia Street in Brooklyn. The facts underlying the murder began much earlier in the day when Adanmes allegedly threatened to kill Reyes' brother. (Tr. at 569-70.) Hoping to deter Adanmes and protect his brother, Reyes sought out Adanmes, first in the early morning and again, in the evening. Id.

When Reyes arrived to the parking lot that evening, Adanmes was standing next to his car arguing with someone. (Tr. at 570.) In addition to Adanmes, the group assembled in the parking lot included Nicky Carrasquillo (hereinafter "Carrasquillo"), who according to Reyes, had also been present earlier in the day when Adanmes and his brother got into the argument which ended with Adanmes' alleged threat. (Tr. at 569.)

After borrowing a gun from a bystander who had warned him that Adanmes was armed, Reyes approached Adanmes. (Tr. at 570.) The conversation did not go well. Reyes and Adanmes argued loudly, and Adanmes allegedly repeated his earlier threat against

Reyes' brother. <u>Id.</u> Eventually, the two drew the attention of Carrasquillo, who according to Reyes, intervened to quiet the fight. <u>Id.</u> As Reyes disengaged from the argument to talk to Carrasquillo, he intentionally kept an eye on Adanmes. (Tr. at 571.)

Adanmes turned away from Reyes and got into his car. <u>Id.</u> From his position outside the driver's side door, Reyes claimed to see Adanmes reach for a silver revolver from inside the glove compartment. <u>Id.</u> Reyes then reached for his own gun. <u>Id.</u> According to Reyes, as he moved towards his gun, Carrasquillo and another person attempted to wrestle the gun from his hands; their efforts proved unsuccessful, however, and the gun fired, striking Adanmes in the chest. <u>Id.</u> Adanmes exited his car, ran a short distance and collapsed to the ground after a second shot was fired in his direction. (Tr. at 471.)

The day following the murder, Carrasquillo gave a statement to the police identifying Reyes as the sole murderer. (Tr. at 600-01.) Carrasquillo's statement mentioned neither Adanmes' gun nor a struggle for Reyes' gun.[2]

On May 3, 1996, the police arrested Reyes, who voluntarily admitted without the presence of counsel, that he shot Adanmes,

---

[2] Carrasquillo's statement was not introduced as part of the prosecution's case. Defense counsel, however, did submit his statement into evidence during the trial court's consideration of Reyes' request for a missing witness charge.

but claimed that it was in self-defense.

(2)

Reyes was thereafter charged by Kings County Grand Jury with two counts of Murder in the Second Degree (New York Penal Law § 125.25[1] [2]) and one count each of Manslaughter in the First Degree (New York Penal Law § 125.20[1]), Manslaughter in the Second Degree (New York Penal Law § 125.15[1]), Criminally Negligent Homicide (New York Penal Law § 125.10), Criminal Possession of a Weapon in the Second Degree (New York Penal Law former § 265.03) and Criminal Possession of a Weapon in the Third Degree (New York Penal Law § 265.02[4]).

Reyes went to trial in 1998 before Justice Plummer Lott. During its opening statement, the defense called the jury's attention to the group of eyewitnesses present at the scene of the murder. (Tr. at 437.) Specifically, he alluded to Carrasquillo's presence and explicitly identified him as a friend of Adanmes. Id. Defense counsel further alluded to another eyewitness, Manny Maldonado, and again tied him to Adanmes. Id.

At the conclusion of defense counsel's opening statement, the prosecutor informed the trial court that he intended to request a missing witness charge if Reyes did not call Carrasquillo as a witness. (Tr. at 447-9.) The prosecution alleged that Carrasquillo was a friend of Reyes, that one of Carrasquillo's parents lived with one of Reyes' parents, that

Carrasquillo and Reyes' brother had been co-defendants in a prior narcotics case and that the Kings County District Attorney's Office was currently prosecuting Carrasquillo for a narcotics offense. (Tr. at 447, 450, 511.)

Defense counsel did not question the prosecution's factual allegations about Carrasquillo's relationship to Reyes at that time.[3] Instead, defense counsel responded by arguing that the trial court should grant a missing witness charge against the prosecution for its failure to call Carrasquillo as a witness. Reyes' trial attorney based his request on two allegations: Carrasquillo was both Adanmes' friend and a drug dealer for Adanmes. (Tr. at 436-7, 450.) The trial court did not rule on the issue at that time.

(3)

The prosecution's case rested on Reyes' statement as well as the testimony of the police officers who responded to the scene and the forensic pathologist who examined Adanmes' body after the shooting. (Tr. at 443-617.) In his statement, Reyes

---

[3]Petitioner's current Mem. of Law, now seeks to introduce documents that call those allegations into dispute, including a marriage certificate for Reyes' parents as well as an affidavit from his father, Angel Luis Reyes, stating (1) that he and Reyes' mother, Juana Vargas, have been married since November 23, 1974; (2) he and Vargas have lived at the same address since 1996; and (3) that neither he nor Vargas have been married to either of Carrasquillo's parents at any time. Angel Luis Reyes Aff. ¶¶ 4-10. In his affidavit, Reyes' father also asserts that his son Norberto was never arrested with Carrasquillo. Id. at ¶ 5.

(1) confessed to shooting Adanmes; (2) claimed self-defense; and (3) clearly stated that Carrasquillo did not see Adanmes reach for a gun.

Among other things, the police officers testified that neither a gun, bullets, shells or drugs were found anywhere at the scene, including inside Adanmes' car, and that they found the glove compartment locked. (Tr. at 472, 493-94, 497, 531-32, 557, 559). The forensic pathologist's testimony explained that Adanmes died from a single gun shot wound to the left side of his upper chest and that the wound was likely the result of a gun fired from at least eighteen inches away. (Tr. at 454, 458, 461.) Carrasquillo was not called to testify for the prosecution.

At the close of the prosecution's case, defense counsel again requested that the trial court grant a missing witness charge against the prosecution such that the jury be allowed to draw unfavorable inferences against the prosecution from Carrasquillo's absence.[4] Principally, defense counsel argued that the unfavorable inference charge was proper under the circumstances because Carrasquillo had given a statement to the police the day after the crime which inculpated Reyes and,

---

[4]Originally, Reyes' counsel requested a missing witness charge be granted for both Maldonado as well as Carrasquillo. However, ultimately the defense did not pursue the request for Maldonado because Maldonado's address at the time of trial was unknown to the prosecution. (Tr. at 412-14, 416-17, 591.)

therefore, should be expected to testify favorably for the prosecution.

The prosecutor opposed defense counsel's request and informed the court that an attorney representing Carrasquillo on his pending narcotics charge had told the district attorney that Carrasquillo would only cooperate if the district attorney accepted a particular plea bargain on Carrasquillo's narcotics case. (Tr. at 589-90.) The prosecution informed the trial court of its unwillingness to grant Carrasquillo such a plea bargain and, consequently, expressed a concern that Carrasquillo's testimony in Reyes' case would be untruthful. Id.

The defense put no affirmative case on at trial. However, defense counsel took advantage of his summation to remind the jury that despite the fact that many people were present at the scene when the police arrived, the prosecution did not call any civilian witnesses to the stand to explain what happened. (Tr. at 644-45, 651, 653-54, 659, 662-63.) Later, in his discussion of the moments right before the murder, defense counsel specifically alluded to Carrasquillo's presence and proximity to Reyes four times. (Tr. at 662-63.)

The prosecution also seized upon its summation as an opportunity to discuss Carrasquillo. The prosecution presented Carrasquillo as a friend of Reyes', citing from parts of both of their statements to the police to establish the relationship.

7

(Tr. at 692-94.) Having built this foundation, the prosecution then attempted to rebut any implicit suggestion by the defense that the prosecution should have called Carrasquillo to the stand. (Tr. at 693-94.) Before the prosecution could make an adverse inference against the defense, however, Judge Lott sustained an objection by defense counsel. (Tr. at 694.)

Ultimately, the trial court's jury instructions did not include a missing witness charge against either party. The jury convicted Reyes of one count each of Manslaughter in the Second Degree and Criminal Possession of a Weapon in the Second Degree. The trial court sentenced Reyes to consecutive prison terms of five to fifteen and a half years for Manslaughter in the Second Degree and four to thirteen and a half years for criminal possession of a weapon.

Reyes appealed his conviction and sentence to the Supreme Court of New York, Appellate Division, Second Department (or "Appellate Division"). On appeal, among other points, Reyes' counsel argued that denial of the missing witness charge violated Reyes' right to due process. Reyes' counsel argued that allowing the jury to draw an unfavorable inference against the prosecution would have had exculpatory potential for Reyes. Specifically, defense counsel wanted the jury to be able to infer that the only eyewitness to the murder available to testify would no longer testify in support of the prosecution's theory that Reyes

8

intentionally shot Adanmes.

By decision and order dated January 13, 2003, the Appellate Division unanimously affirmed Reyes' conviction and sentence. People v. Reyes, 301 A.D.2d 540, 752 N.Y.S.2d 902 (2d Dep't 2003). With respect to the missing witness charge, the Appellate Division ruled that the trial court properly denied Reyes' request because Reyes failed to establish that Carrasquillo was expected to testify favorably for the prosecution and, in any event, the missing witness' testimony would have been cumulative.

On May 16, 2003, Reyes' application to the New York State Court of Appeals, for leave to appeal the Appellate Division's affirmance of his conviction, was denied. People v. Reyes, N.Y.2d 542, 763 N.Y.S.2d 7 (2003).

**Discussion**

Under the Antiterrorism and Effective Death Penalty Act of 1996 (or "AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim either "resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." 28 U.S.C. § 2254 (d).

Reyes' § 2254 petition alleges that his constitutional right to due process was violated when the trial court refused to grant a missing witness charge against the prosecution for its failure to call an eyewitness to the stand. Petitioner rests this argument on <u>Graves v. United States</u>, 150 U.S. 118 (1893), which held it improper for the prosecution to suggest to the jury that it draw an unfavorable inference against the defendant for his failure to call an incompetent witness, his wife, to the stand. <u>Id.</u> at 121. Petitioner's singular reliance on <u>Graves</u> however, is significant and misguided. The Supreme Court did not articulate a constitutional right to a missing witness charge in <u>Graves</u>, <u>supra</u>, 150 U.S. 118; nor has it ever done so.

As a matter of both federal and New York law, whether to grant a missing witness charge "'lies within the sound discretion of the trial court.'" <u>Reid v. Senkowski</u>, 961 F.2d 374, 377 (1992) (quoting <u>United States v. Torres</u>, 845 F.2d 1165, 1170-71 (2d Cir. 1988)); <u>People v. Savinon</u>, 100 N.Y.2d 192, 197, 791 N.E.2d 401, 404, N.Y.S.2d 144, 147 (2003). The trial court's "decisions in this area will rarely support reversal or habeas relief since reviewing courts recognize "'the aura of gamesmanship' that frequently accompanies requests for a missing witness charge as to which the trial judge will have a surer sense" than any reviewing court. <u>United States v. Torres</u>, 845

10

F.2d at 1170 (quoting U.S. v. Erb, 543 F.2d 438, 445 (2d Cir. 1976)).

Petitioner bases his arguments, in part, on an evidence that was never presented to any state court. Even considering these unpreserved arguments, the petition is denied based on its merits. See 28 U.S.C. § 2254 (b)(2) (a petition for a writ of habeas corpus "may be denied on the merits, notwithstanding the failure of the applicant to exhaust [state] remedies.") Petitioner argues that this unpreserved evidence shows that the prosecution's argument connecting the petitioner to the missing witness was factually inaccurate.

Whether the prosecution's arguments were correct or not, petitioner has not established that the judge's decision was arbitrary or capricious. Carrasquillo's demand for a favorable plea was sufficient for the trial court to deny the missing witness charge. Carrasquillo had refused to testify without a favorable plea bargain which the prosecution had no desire or obligation to give. The trial court was well within its discretion to deny a missing witness charge. Public policy requires that the prosecution not be obligated to pay such a price for a witness' testimony.

In any event, habeas relief is not warranted because the failure to instruct by itself did not so infect the entire trial that the resulting conviction violated due process. See Cupp v.

Naughten, 414 U.S. 141, 147 (1973).  In order to be entitled to habeas relief, petitioner must demonstrate that any constitutional error had "substantial and injurious effect or influence in determining the jury's verdict," and that the error resulted in "actual prejudice."  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quotation marks omitted).  Not only was defendant not entitled to the instruction, but the defendant was allowed to emphasize the witness' absence during his closing arguments.  With this emphasis, there is no prejudice.  See U.S. v. Mittelstaedt, 31 F.3d 1208, 1215 (2d Cir. 1994); Torres, 845 F.2d at 1170.

## Conclusion

For these reasons, petitioner's application for a writ of habeas corpus is dismissed.  Further, as the petition presents no questions of substance for appellate review, a certificate of appealability is denied.  The Clerk of Court is directed to enter judgment and close the case.


Dated: Brooklyn, New York
       December 29, 2005

                                    SO ORDERED:


                                    ___/s/_____
                                    David G. Trager
                                    United States District Judge